## NATIONAL LABOR RELATIONS BOARD v. C. NELSON MFG. CO.

### No. 517, Original.

Circuit Court of Appeals, Eighth Circuit.

June 12, 1941.

Roman Beck, Atty., National Labor Relations Board, of Washington, D. C. (Robert B. Watts, Gen. Counsel, Laurence A. Knapp, Associate Gen. Counsel, Ernest A. Gross, Asst. Gen. Counsel, and Richard C. Barrett, Atty., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Clarence T. Case, of St. Louis, Mo. (David W. Voyles, of St. Louis, Mo., on the brief), for respondent.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This case comes before the court upon petition of the National Labor Relations Board for enforcement of an order issued by it against respondent pursuant to Section 10(c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

Respondent is a Missouri corporation, having its plant and principal place of business in St. Louis, Missouri, where the unfair labor practices are found to have occurred. Charges and amended charges having been filed by Harry Semon and Wylie Parker, the Board, upon the usual proceedings pursuant to Section 10 of the Act,[1] issued its decision and order against respondent on October 11, 1939, reported in 15 N.L.R.B. 1051.

In the response to the petition of the Board for the enforcement of its order the respondent has assailed each provision of the order separately, asserting as to each provision that it should not be enforced for reasons elaborated in the response. But in respondent's brief it is stated that the Board had sustained the respondent on all the major issues in the case and that only minor issues are before this court. It presents seven of such issues.

One, two and four relate to the findings and order of the Board concerning two labor organizations of respondent's employees which existed in the plant at different times—Nelson Protective Association, called N.P.A., and Nelson Employees' Council. They were found to be company dominated. The first named was ordered disestablished and the respondent was ordered to deny recognition to the other. The respondent contends that neither of the organizations had functioned as labor organizations or received any substantial recognition from respondent as such, and that respondent had no intention of using either as a collective bargaining group, and that the Board has exceeded its powers in making any cease and desist order in respect to them. We think the facts found by the Board upon substantial evidence in the record fully sustain paragraphs 1(a) (b) (c) of the cease and desist order in respect to Nelson Protective Association and Nelson Employees' Council, and paragraphs 2(a) (b) (f), directing affirmative action in respect to them.

Respondent's third issue relates to the order to cease and desist from discouraging membership in affiliated labor organizations, described and referred to as the Union. It is contended that because of the Board's finding that no unfair labor prac-

---

[1] These were: amended charges, a complaint, an answer, a hearing before a trial examiner; the filing of a brief by respondent with the trial examiner, intermediate report of the trial examiner, exceptions thereto by respondent and by Ernest Barnes, oral argument before the Board and the submission by respondent to the Board of a brief.

tice on respondent's part had occasioned the "walk out" of the employees, and because of the indications of fairness of respondent towards the Union and its willingness to bargain, the Board was without power to make the part of the order referred to. We think the facts found by the Board upon substantial evidence justify paragraphs 1 (c) and 2 (f) of the order.

The fifth and sixth issues relate to the reinstatement of four workmen with back pay required by paragraphs 2 (c) and 2 (d) of the order.[2]

The findings of fact upon which the Board predicated the foregoing order for re-instatement and back pay appear at pages 1055 to 1074, 15 N.L.R.B., and need not be repeated here. The Board found that the four men mentioned in the order did not voluntarily leave their employment but that respondent discharged them "because they failed to utilize the N.P.A. to represent them in their labor relations with the respondent and engaged as leaders in concerted activities among themselves and with other employees to press the grievance concerning their wage rates. The respondent by discharging them discriminated in regard to their hire and tenure of employment, to encourage membership in the N. P.A. and discourage it in the Union, thereby interfering with, restraining and coercing its employees in the exercise of rights guaranteed them in Section 7 of the Act."

It is earnestly contended for respondent that the evidence should convince that the four employees above named were not discharged by respondent but quit their employment, and that if they did not quit they were guilty of insubordination and misconduct rendering them ineligible for re-employment. That they were seasonal employees for whom respondent had no constant need, and therefore it is contended no back pay could be awarded them.

There is some substantial testimony to support the finding of the Board that the men were discharged and that respondent's reason for the discharges was as found by the Board. The employment of the men was seasonal and the order of the Board can not be construed to mean that the four men must be furnished employment at a period when no employment is available. Nor does the order mean that the four employees are to be paid wages for the entire period that has elapsed since their discharge. The plain meaning of the order is that the four men are to be restored to their former positions and given work when other like employees are given work, and the back pay that shall be paid them is measured by what they would have earned during the period if they had not been discharged, taking into account the seasonal character of the business. The matter of the men having obtained substantially equivalent employment is discussed by respondent, but we do not find that any of them were shown to have done so. We hold paragraphs 2 (c) and 2 (d), supra, should be enforced.

Upon its seventh issue the respondent complains against the provision of the Board's order requiring that nineteen named workmen, who had participated in an unsuccessful strike, be continued on the respondent's preferential list to be offered work whenever work becomes available for them. Respondent says that it customarily keeps its former employees listed as a matter of usual practice, so that whenever it has occasion to employ additional men it may give these experienced ones first call. The respondent says that it has no quarrel with the Board about respondent's usual practice of giving former employees jobs when they are available, but contends that the Board exceeded its powers and resorted to unnecessary and punitive precaution in

---

2 "(c) Offer to Elzie Fleeman, Elmer Wuest, Ervin Barnes, and Paul Price immediate and full reinstatement to their former or substantially equivalent positions, without prejudice to their seniority or other rights and privileges;

"(d) Make whole said Elzie Fleeman, Elmer Wuest, Ervin Barnes, and Paul Price for any loss of pay they may have suffered by reason of their discharge, by payment to each of them respectively of a sum of money equal to the amount which he would normally have earned as wages during the period from the date of his discharge to the date of such offer of reinstatement, less his net earnings during said period; deducting, however, from the amount otherwise due to each of said employees, monies received by said employees during said period for work performed upon Federal, State, county, municipal, or other work-relief projects, and pay over the amount so deducted to the appropriate fiscal agency of the Federal, State, county, municipal, or other government or governments which supplied the funds for said work-relief projects."

making its order against respondent as to the nineteen men.

But we think that the Board was justified in holding as it did, that the respondent had engaged in some unfair labor practices. The Board exonerated the respondent from some of the charges but not all of them. Whether the requirement as to continuing the nineteen men on the preferential list would or would not "effectuate the policies of the Act" was a matter peculiarly within the province of the Board to determine. It specially declared that its order was to effectuate the policies of the Act and we find no elements of harshness, arbitrariness or injustice that would justify refusal to grant enforcement. The order does not contemplate that the respondent shall set up a preferential list which might put the nineteen men in some better position in respect to future employment than they would have had in the established course of the business, but merely to maintain the same course and to accord them non-discriminatory treatment. Phelps Dodge Corp. v. National Labor Relations Board, 61 S.Ct. 845, 85 L.Ed. ——, decided April 28, 1941.

On consideration of all contentions for respondent and review of the whole case, we conclude that the decision and order of the Board is within the powers conferred upon it by the Act and its order should be enforced in all respects, except that part of paragraph 2 (d) requiring respondent to make payment to public work-relief agencies, which part is denied enforcement.

Let an order of enforcement, excluding the excepted part, be entered.