**UNITED STATES ex rel. and for Use and Benefit of Stanley v. WIMBISH.**

No. 5441.

Circuit Court of Appeals, Fourth Circuit.

April 10, 1946.

J. Y. Jordan, Jr., of Asheville, N. C., and Cecelia H. Goetz, Atty., Department of Justice, of Washington, D. C. (John F. Sonnett, Asst. Atty. Gen., D. E. Henderson, U. S. Atty., of Charlotte, N. C., and Searcy L. Johnson, Sp. Asst. to Atty. Gen., on the brief), for appellant.

Kingsland Van Winkle, of Asheville, N. C. (Harkins, Van Winkle & Walton, of Asheville, N. C., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and TIMMERMAN, District Judge.

DOBIE, Circuit Judge.

Under the provisions of Section 8(e) of the Selective Training and Service Act of 1940 (hereinafter called the Act), as amended, 50 U.S.C.A.Appendix, § 308(e), this action was brought by the United States Attorney on behalf of D. E. Stanley, seeking money damages from E. Y. Wimbish, hereinafter referred to as defendant, which action was based upon the alleged failure of defendant to reemploy Stanley upon his release from service in the Army. The United States District Court for the Western District of North Carolina found that Stanley was not (within the meaning of the Act) an employee of defendant at the time of his induction and accordingly dismissed the action. From that judgment the United States brings this appeal.

The essential facts appear to be as follows: defendant is a tobacco warehouse operator, conducting his business in various market centers in North Carolina and Georgia. Stanley was employed by him in various capacities for a number of years at Baxley, Georgia, and when defendant first entered the Asheville, North Carolina, market in the fall of 1939, he placed Stanley in the position of sales manager and contact man in this new enterprise. The Asheville market operates for about two months each year, starting in December and the custom here, as elsewhere, seems

to be that the contact man works for a few weeks in advance, traveling through the area and soliciting business for his warehouse. Stanley continued in the same position for three seasons, 1939–40, 1940–41 and 1941–42, and his employer testified that his services were entirely satisfactory.

The testimony in the record is conflicting and confused as to the precise payments made to Stanley for his services. It is apparently conceded that he received only a percentage of profits the first two seasons, while the third season he received a salary as well. His version of the agreed percentages differs from that stated by his employer, but all agree that the range during the three year period was not more than from 20% to 33⅓%, with the highest percentage the third year.

At the end of the 1941–42 season, both Stanley and his employer anticipated that Stanley would probably be inducted into military service before the next season and this prospect was discussed by them. The testimony is conflicting as to the extent of their discussion with respect to the selection of Stanley's replacement. In any event, Stanley was duly inducted on April 1, 1942, and shortly thereafter the defendant employed R. R. Meador to succeed him. There had been preliminary conversations between Wimbish and Meador with respect to such employment, but no definite arrangements were made until after Stanley notified Wimbish that he had actually been accepted for service.

After approximately fourteen months in service, Stanley was honorably discharged. Prior to this event, the defendant had already arranged with Meador that he would continue in the capacity of sales manager for the ensuing 1943–44 season. Shortly after Stanley's discharge, he wrote Wimbish one or more times with reference to employment. Apparently the letter or letters were not preserved and in any event are not in the record. At the trial, defendant contended that this correspondence concerned only the resumption of their summer-time joint venture in the manufacture of tobacco flues and made no reference to reemployment for the current season in the Asheville warehouse. Appellant, however, rested squarely upon the pleadings wherein only the Asheville employment was alleged, with proper application for reinstatement and refusal thereof by the defendant. Defendant's answer, which must be assumed to be responsive to the pleadings, duly admitted an application for employment within the prescribed period and the defendant's refusal to reemploy. In this state of the pleadings, duly supported by Stanley's testimony at the trial, the defendant is estopped from denying these phases of Stanley's compliance with the statutory requirements.

The foregoing analysis of the factual situation has not touched upon one problem which ultimately must lie at the crux of this controversy, namely the precise nature of the employment contract between Stanley and Wimbish. Concededly, the agreement was entirely verbal and the testimony by the parties was in obvious conflict. Apparently even the verbal agreement was fragmentary and to be interpreted in the light of the customs of the business. Stanley's version is that, although the employment was admittedly seasonal, the contract was of the usual kind, for an indefinite period, terminable at will by either party, and with periodic adjustments of rate of compensation as conditions changed and the employee's skill and usefulness increased. Wimbish gives as his version that each season's work was the subject of a separate and distinct contract of employment, unrelated to the employment of previous seasons. This analysis he bases primarily upon the revision of rates of compensation made each season. The testimony offered on both sides with respect to the customs of the trade was not very revealing and did little other than establish the somewhat obvious fact that satisfactory employees usually continued in the same position year after year. The Stanley version implies that he took something in the nature of a leave of absence for military service, while the Wimbish interpretation is merely that Stanley's employment was terminated after the 1941–42 season and not thereafter renewed. Since, by this view, there was no existing employment contract at the time of Stanley's induction, Wimbish contends that Stanley had no rights with respect to reemployment upon his discharge.

At the trial in the District Court, the judge granted defendant's motion for a directed verdict at the conclusion of the testimony. In doing so, he not only endorsed Wimbish's view of the nature of the employment contract but went even further by indicating his opinion that seasonal workers drafted outside the period of their actual employment were entitled to

the reemployment benefits of this Act only if they held such a contract as would sustain an action for breach of contract if they failed to return to the job upon their discharge. Enforcing this analysis, he stressed the hardship which would be worked upon an employer who could not make long range commitments to his personnel because of uncertainty as to whether or when former employees might return from military service.

■ We find ourselves unable to concur in this interpretation of the applicable law. So far as the research of counsel, supplemented by our own investigation, has disclosed, this is a case of first impression with respect to the applicability of the reemployment provisions of the Act to seasonal workers. However, the intent of the statute to protect the economic position of persons released from service is too clear to be in any doubt. As stated in an opinion from the Third Circuit:

"The Act intends that the employee should be restored to his position even though he has been temporarily replaced by a substitute who has been able, either by greater efficiency or a more acceptable personality, to make it desirable for the employer to make the change a permanent one." Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653, 656.

This intent must certainly override any considerations of the employer's convenience or pleasure.

This leaves to be determined the fundamental issue whether or not Stanley, in the words of the statute, "left a position other than a temporary position, in the employ of any employer * * *." While not actually controlling under the circumstances, decisions which have interpreted 'position' as used in other regulatory statutes become especially important. Thus, this Court held that seasonal workers, required to be reinstated in their former positions by an order of the National Labor Relations Board, had such positions but were entitled to compensation only during the usual season of employment. National Labor Relations Board v. Planters Mfg. Co., 4 Cir., 106 F.2d 524. The same conclusion was reached in the Eighth Circuit. National Labor Relations Board v. C. Nelson Mfg. Co., 8 Cir., 120 F.2d 444. Both these opinions made clear that one may hold a position in a seasonal industry at times when no work is going on.

■ This possibility apparently was not recognized by the lower court, where, as indicated above, the test was applied that during out-of-season periods only legally enforceable employment contracts create such positions. A better test of what constitutes a continuing employment relationship was laid down by the Supreme Court in another labor case as "when such employees are customarily continued in their employment with recognition of their preferential claims to their jobs." National Labor Relations Board v. Waterman S. S. Co., 309 U.S. 206, 219, 60 S.Ct. 49, 84 L.Ed. 704. We now hold that this constitutes a sufficient description of the characteristics of a "position", as the term is applied to seasonal workers, in determining the scope of the reemployment benefits under the Act here in question. Where a worker in a seasonal business can establish "customary continuance in his employment and recognition of his preferential claim to his job" when work is resumed, he is entitled to the protection of the Act's reemployment provisions, though he entered military service during an off-season period. Proof of a legally enforceable contract for the following season is no more a proper requirement in such cases than it is with respect to any other employee whose services are terminable at will.

■ The appellant, Stanley, has asked us not only to reverse the judgment below but also to enter final judgment in his favor. This we are unable to do. The lower court directed a verdict for defendant upon the basis of what we hold to be an improper interpretation of the Act. Accordingly that court did not reach a decision on the many disputed questions of fact involved in this case. Therefore, it is necessary that the case be remanded to the District Court for further proceedings in conformity with this opinion.

Reversed and remanded.