**Derlyn E. MOE, Appellant,**

v.

**EASTERN AIR LINES**, Inc., Appellee.

No. 16499.

United States Court of Appeals
Fifth Circuit.

June 18, 1957.

Hershel Shanks, Atty., Dept. of Justice, Samuel D. Slade, Atty., Washington, D. C., E. David Rosen, Asst. U. S. Atty., Miami, Fla., George Cochran Doub, Asst. Atty. Gen., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellant.

W. Glen Harlan, Atlanta, Ga., Charles M. Moon, Miami, Fla., Gambrell, Harlan, Russell, Moye & Richardson, Atlanta, Ga., E. Smythe Gambrell, Atlanta, Ga., of counsel, for Eastern Air Lines, Inc.

Before BORAH, RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

This action is by an honorably discharged veteran to enforce alleged reemployment rights under Section 9 of the Universal Military Training and Service Act of 1951, 65 Stat. 75, 50 U.S.C.A. Appendix, § 459.[1] The appellant insists

---

1. In pertinent part as follows:

"*Separation from service*—(a) *Certificate recording proficiency and merit; physical examination*

"Any person inducted into the armed forces under this title for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 4(b) shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained. * * *

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

* * * * *

"(B) if such position was in the employ of a private employer, such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; * * *, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so * * *.

"(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant

that the defendant's motion for summary judgment was improperly granted, and that summary judgment should have been rendered in favor of the plaintiff. The appellee, while seeking an affirmance of the summary judgment dismissing the complaint, nevertheless calls to our attention its challenge to jurisdiction which was not ruled on by the district court. The substance of that challenge will be stated and ruled upon as soon as a few of the facts necessary to an understanding of the issues can be set forth.

Moe was employed by Eastern Air Lines as a copilot on August 4, 1950. Seven months later, on March 1, 1951, he was called to active duty in the Armed Forces of the United States. He remained in the service for about a year and nine months, and on December 1, 1952 was reinstated in Eastern's employ as a copilot, after being honorably discharged from the military service. It is agreed that in all respects save one Moe was treated "as * * * if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." [2] The one respect in controversy is that Eastern refused to credit his time in the service as time on the job with respect to "seniority for pay purposes," and thereby Moe received a lower wage rate than he would have received if he had remained continuously in Eastern's employ. For an understanding of this controversy a consideration of the collective bargaining agreement is essential, and we shall recur to that later.

The district court concluded that, under the collective bargaining agreement, Moe held a "temporary position" and, hence, that he had no reemployment rights under the Act. As an additional reason for denying relief, the district court held that, under the Act, time in the service need not be counted as time on the job for the purpose of the system of wage increases awarded under the collective bargaining agreement.

Thus, three questions are presented to this Court for decision: 1, Did the district court have jurisdiction? 2, Did

---

to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

"(d) In case any private employer fails or refuses to comply with the provisions of subsection (b) or subsection (c) (1), the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action: *Provided*, That any such compensation shall be in addition to and shall not be deemed to diminish any of the benefits of such provisions. The court shall order speedy hearing in any such case and shall advance it on the calendar. Upon application to the United States district attorney or comparable official for the district in which such private employer maintains a place of business, by any person claiming to be entitled to the benefits of such provisions, such United States district attorney or official, if reasonably satisfied that the person so applying is entitled to such benefits, shall appear and act as attorney for such person in the amicable adjustment of the claim or in the filing of any motion, petition, or other appropriate pleading and the prosecution thereof specifically to require such employer to comply with such provisions: *Provided*, That no fees or court costs shall be taxed against any person who may apply for such benefits: *Provided further*, That only the employer shall be deemed a necessary party respondent to any such action." 50 U.S. C.A.Appendix, § 459.

2. 50 U.S.C.A.Appendix, § 459 (c) (2).

Moe leave a mere "temporary position" to perform his military service? 3, Must Moe's time in the service be counted as time on the job for the purpose of "pay seniority?"

### ■ I. Jurisdiction.

Under the collective bargaining agreement, Moe is entitled to have any "grievance concerning any action of the Company" handled in accordance with procedure therein established, including appeals within the Company and then "further appeal" to the Eastern Air Lines Pilots' System Board of Adjustment created in accordance with the requirements of 45 U.S.C.A. § 184 and § 153. Unless otherwise provided by the Universal Military Training and Service Act, it would appear that the Adjustment Board procedure is the exclusive primary remedy for Moe's grievance.[3] However, Section 9(d) of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 459(d) provides:

"In case *any* private employer fails or refuses to comply with the provisions of subsection (b) or (c) (1) [of this section], the district court of the United States for the district in which such private employer maintains a place of business shall have power * * * specifically to require such employer to comply with such provisions and to compensate [the veteran] for any loss of wages or benefits suffered by reason of such employer's unlawful action * * * ." (Emphasis supplied.)

Subject to the possibility that the Supreme Court may rule otherwise in deciding No. 849, October Term, 1956, McKinney v. Missouri, K. & T. R. Co., certiorari to 10th Circuit, 240 F.2d 8, granted 353 U.S. 948, 77 S.Ct. 860, 1 L. Ed.2d 858, we think that it is now settled that the foregoing specific jurisdictional grant of the Universal Military Training and Service Act prevails over the more general policy of the Railway Labor Act.[4]

### II. "Temporary Position."

The collective bargaining agreement provided that, "The copilot shall be on probation for an aggregate of the first twelve months of his service on flying status as a copilot with the Company." Moe had served only seven months at the time of his induction. The district court concluded:

"The Court holds that the Plaintiff, Derlyn E. Moe, is not entitled to invoke 50 U.S.C.A.App. § 459, because that section specifically *excludes* from its application persons who left a 'temporary position' before entering the Armed Forces. When the Plaintiff entered the service on March 1, 1951, he held such a 'temporary position' inasmuch as he was still 'on probation' which meant he had no vested right of employment and could be discharged at any time and for any reason (Union Contract, Section 29(c) (2)).

"The cases of Venzel v. United States Steel Co., 6 Cir., 1953, 209 F.2d 185, and Lesher v. Mallory & Co., 7 Cir., 1948, 166 F.2d 983, held that 'probationary employees' hold 'temporary positions' within the meaning of 50 U.S.C.A.App. § 459

---

3. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Railway Conductors of America v. Southern Railway Co., 339 U.S. 255, 256, 70 S.Ct. 585, 94 L.Ed. 811; Sigfred v. Pan American World Airways, 5 Cir., 230 F.2d 13, 18, 19; Alabaugh v. Baltimore & Ohio R. Co., 4 Cir., 222 F.2d 861; cf. United States ex rel. Deavers v. Missouri, K. & T. R. Co., 5 Cir., 171 F.2d 961, 963.

4. Oakley v. Louisville & N. R. Co., 338 U. S. 278, 70 S.Ct. 119, 94 L.Ed. 87; Diehl v. Lehigh Valley R. Co., 348 U.S. 960, 75 S.Ct. 521, 79 L.Ed. 749, reversing Diehl v. Lehigh Valley R. Co., 3 Cir., 211 F.2d 95; Bostian v. Seaboard Air Line R. Co., 4 Cir., 211 F.2d 867; Gregory v. Louisville & N. R. Co., 6 Cir., 191 F.2d 856; Morris v. Chesapeake & Ohio Ry. Co., 7 Cir., 171 F.2d 579; Spearmon v. Thompson, 8 Cir., 167 F.2d 626; Conner v. Pennsylvania R. Co., 85 U.S.App.D.C. 223, 177 F.2d 854; cf. United States ex rel. Deavers v. Missouri, K. & T. R. Co., 5 Cir., 171 F.2d 961, 963.

(and its predecessor section), and, therefore, those probationary employees may not invoke that section."

It was stipulated that Moe "was never informed orally or by letter or memorandum that he was being employed for a temporary position." The agreement itself makes only two distinctions between a probationary and a nonprobationary copilot. It provides that first pilots and copilots who have completed their probationary period "shall, in addition to retaining their position on the seniority list, accrue seniority for pay purposes." The validity of that distinction is attacked in this case and will be discussed in the concluding part of this opinion. The other difference is that a copilot, during his probationary period, is not extended the right of investigation and hearing, meaning, we think, that he is not entitled to use the grievance procedure. In effect, the employment relationship during the probationary period is an employment at will, or so long as is mutually agreeable to both of the parties. Does that make the employment "temporary?"

██ Section 9(b) of the Act, 50 U.S. C.A.Appendix, § 459(b), provides unemployment rights for any person who, in order to perform his military service, leaves a position "other than a temporary position." The Sixth Circuit has well pointed out that the Act does not define the positions covered as "permanent," but simply as "other than * * * temporary." Bryan v. Griffin, 6 Cir., 166 F.2d 748, 750. The exclusion is in line with the general purpose of the Act, that a person called into the service "was not to be penalized on his return by reason of his absence from his civilian job." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230.[5] A temporary job, or one which a person holds only temporarily, might well be lost to him regardless of his call to the colors.

A job itself may be temporary,[6] or the employee's incumbency may be temporary.[7] The job or position of copilot exists permanently. The district court thought, however, that during his twelve month probationary period, Moe's incumbency in that position was temporary. We do not agree.

██ Employers have argued on the one hand that only employees with contracts of definite duration are within the Act's protection; and, on the other hand, that only employees at will are covered by the Act.[8] Neither fact, in our opinion, is controlling. Keeping in mind the purpose of the Act, we think that the controlling determination is whether, regardless of the contract of employment, there was a reasonable expectation that the employment would be continuous and for an indefinite time.[9] Applying that test, it is clear that Moe held "other than a temporary position." As a probationary employee he had every reason to expect that his employment would be continuous and for the indefinite future, as indeed it turned out to be.

The Venzel case, supra, from the Sixth Circuit and the Lesher case, supra, from the Seventh Circuit, relied upon by the

---

5. In the same opinion, it is noted that, "This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need." 328 U.S. at page 285, 66 S.Ct. at page 1111. Compare Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328.

6. Houghton v. Texas State Life Insurance Co., 5 Cir., 166 F.2d 848; Spearmon v. Thompson, 8 Cir., 167 F.2d 626, 630.

7. Howie v. Lance, 4 Cir., 172 F.2d 107; Salzman v. London Coat of Boston, Inc., 1 Cir., 156 F.2d 538; Venzel v. United States Steel Co., 6 Cir., 209 F.2d 185;

Lesher v. P. R. Mallory & Co., 7 Cir., 166 F.2d 983.

8. Compare United States ex rel. and for Use and Benefit of Stanley v. Wimbish, 4 Cir., 154 F.2d 773, with Trusteed Funds v. Dacey, 1 Cir., 160 F.2d 413.

9. See the full discussion in Trusteed Funds v. Dacey, 1 Cir., 160 F.2d 413, 415. See, also, Bryan v. Griffin, 6 Cir., 166 F.2d 748, 750; Houghton v. Texas State Life Insurance Co., 5 Cir., 166 F.2d 848; United States ex rel. and for Use and Benefit of Stanley v. Wimbish, 4 Cir., 154 F.2d 773.

district court, are admittedly in point, though it might be noted that in those cases the probationary period was three months instead of twelve months, as here. With deference, however, each of those cases seems to us to put undue emphasis on the formal or nominal designation of the employee as "probationary" and to ignore the justifiable expectation of continuous employment for the indefinite future and the policy behind the exception of those in a temporary position. For the reasons stated, we are unable to follow those decisions.

III. "Pay Seniority."

The collective bargaining agreement provided that a copilot's "seniority for pay purposes is to be computed on the actual length of service as a pilot with the Company, except as provided in this agreement." The single exception to the requirement of "actual length of service" is the provision heretofore noted that first pilots and copilots who have completed their probationary period "shall, in addition to retaining their position on the seniority list, accrue seniority for pay purposes" during periods of active military service.

The contract provided for a monthly base or minimum pay which varied with the length of service with the Company. The first year a copilot received $350 per month, the second year $400 per month. The third year the base rate dropped to $250 per month and increased each year until, at the eighth year, the base rate reached $350 per month. However, from the third to the eighth year, copilots were paid, in addition to their base pay, an hourly wage rate. This additional hourly wage rate depended on the type of craft, the gross weight of the craft, the number of miles flown during the month, whether the flights required day or night flying, and the length of service of the copilot. Finally, a minimum monthly guarantee was provided, which for the first two years was the base pay and thereafter increased yearly until the eighth year when it was $565 a month. Thus, a copilot was insured of a yearly wage increase for the first eight years of his service. The pay of first pilots was computed in a similar manner covering an eight year period, so that a qualified employee, beginning as a copilot, could expect his earnings to increase gradually and substantially over a sixteen year period, if, after eight years, he was promoted to the first pilot.

The district court proceeded upon the theory that the "actual length of service" of a probationary copilot is to be used as a measure of his proficiency. It is true, that a benefit which accrues by virtue of the increased skill and ability that comes from experience on the job is not covered by the Act. Military service is not a substitute for proficiency. Altgens v. The Associated Press, 5 Cir., 188 F.2d 227; Poore v. Louisville & Nashville R. Co., 5 Cir., 235 F.2d 687. On the other hand, there is an element of experience in every seniority system.

Under the contract itself, it seems to us that the increased wage rate was not intended to be related peculiarly to proficiency. Thus, as to first pilots and copilots who have completed their probationary period, seniority for pay purposes continues to accrue during periods of active military service even if they have no flying experience in the Armed Forces. Flying experience with another company is not counted in computing the wage rate as would be the case if the wage increases were awarded for the increased proficiency that comes from experience. Wage increases based on length of service are completely automatic, with no discretion in anyone to withhold the increase if it is not merited. Proficiency would obviously be a much more important factor in a system of seniority governing assignments to flights requiring skill and ability than in a system of seniority for pay purposes.

The Third Circuit in its opinion in Diehl v. Lehigh Valley R. Co., 211 F.2d 95, 99, found an irreconcilable conflict between the "continuous employment" test and the "furlough or leave of absence" test, and adopted the latter. The Supreme Court granted certiorari and

summarily reversed the judgment in a per curiam opinion, 348 U.S. 960, 75 S. Ct. 521, 99 L.Ed. 749, which in turn relied upon the opinion in Oakley v. Louisville & Nashville R. Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87, based solely on the "continuous employment" test. The "continuous employment" test was provided in Section 9(c) (2), enacted in 1948:

"It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) should be so restored *in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."* (Emphasis supplied.)

According to the legislative history, the addition was "a statement of policy regarding the application of the 'escalator principle.'" Senate Report 1268, 80th Congress, 2nd Session, 16. The so-called "escalator principle" was first enunciated in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230: "* * * he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." The "continuous employment" test was again repeatedly referred to in Oakley v. Louisville & N. R. Co., 338 U.S. 278, 282, 283, 284, 285, 70 S.Ct. 119, 94 L.Ed. 87. It received the final and definite approval of the Supreme Court in Diehl v. Lehigh Valley R. Co., 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749.

■ It would seem obvious that, in the case of a conflict between the terms of the Universal Military Training and Service Act and the terms of a private contract, the Act must control. In Fishgold v. Sullivan Drydock & Repair Corp., supra, 328 U.S. at page 285, 66 S.Ct. at page 1111, the Court said:

"* * * no * * * agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." Again, Diehl v. Lehigh Valley R. Co., 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749, held that a contract provision requiring a period of actual work on the job before the accrual of seniority was invalid as to a veteran. Moe was entitled to the status he would have enjoyed had he been continuously in his civilian employment. The judgment is therefore reversed and the cause remanded with instructions to enter judgment for the plaintiff.

Reversed.