**Donald C. MARTIN, Jr., Plaintiff-Appellant,**

v.

**ROOSEVELT HOSPITAL, Defendant-Appellee.**

**No. 477, Docket 33953.**

United States Court of Appeals, Second Circuit.

Argued Jan. 20, 1970.

Decided April 6, 1970.

156

Howard F. Ordman, New York City (Putney, Twombly, Hall & Hirson, New York City, of counsel), for plaintiff-appellant.

Walter J. Holzka, New York City (Winthrop, Stimson, Putnam & Roberts, New York City, of counsel), for defendant-appellee.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal raises a novel question concerning the application of the reemployment provisions of § 9 of the Selective Service Act, 50 U.S.C.App. § 459(b), to a hospital resident. So far as here relevant, the statute provides that any person who "leaves a position (other than a temporary position) in the employ of any employer" in order to perform military

service is entitled to be reemployed in that position upon satisfactory completion of his service if he makes application therefor within ninety days after discharge, "unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so." For one year after reinstatement the employer is forbidden to discharge the returned veteran without cause. By 50 U.S.C.App. § 459(d), the district courts are given jurisdiction over actions to compel performance of the employer's duty under the section.

In 1963 Roosevelt Hospital, a highly regarded voluntary hospital in New York City, maintained a five-year training program in surgery. Each year eight physicians entered the program under two-year contracts. If an opening developed after the first or internship year, an additional physician who had completed a year of internship elsewhere might be hired for the next step on the ladder, known as "third assistant resident," under a one-year contract. The eight were winnowed to three "second assistant residents" for the third year. However, it was normal for two or three of the third assistants not to compete for the second assistant posts, going instead into other residency programs at the hospital, such as gynecology or orthopedics. The hospital had three "first assistant residents" in surgery during the fourth year and three "chief residents" in surgery during the fifth. A booklet describing the program stated:

> Appointments are available each July. In the last three years appointments are generally made from the resident group of the preceding year. Every effort is made to reappoint those members of the resident staff who are called into the armed forces before completion of their training.

The plaintiff, Dr. Martin, had received his M.D. degree from the University of Pennsylvania in 1962 and served his internship at Pennsylvania Hospital. In December 1962 he was offered and accepted a position as third assistant resident in surgery at Roosevelt Hospital for the ensuing year and signed a contract "to serve the Hospital faithfully for the full period of the year, or during the pleasure of the Board, from July 1, 1963, to July 1, 1964." On arriving he was told that he would have the same chance of promotion at the end of the year as any of the other third assistant residents except that in the event of an exact tie the hospital "would give the nod" to a resident who had served his internship there. At trial the executive vice-president of Roosevelt Hospital testified that in the one or two earlier cases he could recall in which doctors had entered the program at the third assistant level, they had not been selected to return for the following year. He attributed this to the fact that selections for second assistants were made in the fall, and the natural tendency of the staff surgeons was to prefer a man with whom they had worked for fifteen months over one they had known for only three. There was no testimony that this greater degree of built-in bias against interns from other hospitals was communicated to Dr. Martin.

After Dr. Martin had spent three months at the hospital, he was ordered to two years of active duty with the Navy. In June 1964, while in Okinawa, he notified Dr. Amendola, chief of the hospital's department of surgery, of his desire to "be fitted back into the position of third assistant" upon completion of his service in September 1965. Dr. Amendola answered, "Although it appears at present that there will not be any vacancies on the staff when you are available in September, 1965, I would suggest that you fill out the enclosed application form for our active file." Dr. Martin replied that he "was disappointed at not being reinstated as third assistant" and "had trouble making [himself] fill out another application form, when a previous one has already been processed and approved." He added, "It might well be that I am not the most gifted third assistant to try my hand at surgery at the Roosevelt Hospital, but three months

hardly seems like a sufficient length of time to prove oneself."

Having been transferred to the Naval Hospital in Bethesda, Maryland, Dr. Martin came to New York during the winter of 1964–65 to press his application; another head surgeon at Roosevelt stated that he knew of no vacancies for the coming year. Shortly thereafter Dr. Martin was offered and accepted a position as junior assistant resident at Boston City Hospital, to commence on his release from the Navy. He was honorably discharged on September 30, 1965, and began service in Boston the next day. Rapidly becoming dissatisfied, Dr. Martin wrote Roosevelt Hospital during October; the text of the letter is not available. On November 3, 1965, the hospital sent him application forms. Dr. Martin filled them out and returned them on November 30, along with an explanatory letter. This recited the facts, his disappointment at not having been reinstated as a third-year resident at Roosevelt, his reasons for desiring to be trained there, and his hope that he might "return to the Roosevelt Hospital as a second assistant resident in surgery, having completed this current academic year at the Boston City Hospital." Not receiving an answer, Dr. Martin came to New York for an interview with Dr. Patterson, Executive Officer of the Department of Surgery, to inquire whether there were any openings in the program; "it was implicit, since I submitted an application, that I was referring to the second assistant."

In the spring Dr. Martin again wrote the hospital; Dr. Patterson answered, on April 27, 1966, that "Unfortunately, our surgical residency program continues to be very full" and encouraged Dr. Martin to pursue plans, evidently mentioned by him, to seek a residency in England. A month later Dr. Martin answered, expressing his hope that he could "be fitted in somewhere along the line" and stating

that he felt "as a matter of principle" he should be allowed to finish the year he "started in 1963." Dr. Patterson replied "that our residency training program is full and that we have many men returning from the armed services, at regular intervals. These are men who began their training with us and we are obligated." [1]

In October, 1966, having become a resident at Monmouth Medical Center, N. J., Dr. Martin tried again. Dr. Patterson declined, explaining that "our first responsibility is to those men who began their surgical training with us as surgical interns" and that all of the present group of interns would continue the next year. Dr. Martin applied once more in January 1967, while serving at a hospital in Long Island, but was told the quota was full until a year from July. Having gone to Guy's Hospital in London, he wrote in April 1968, seeking appointment either for the year beginning July 1, 1968, or for the following year, but was again refused. A further refusal occurred in December 1968, with respect to the year beginning July 1, 1969. This action in the District Court for the Southern District of New York followed.

Judge Bonsal, to whom the case was tried without a jury, found against the hospital's claims that Dr. Martin had not made application for reinstatement within 90 days after his discharge on September 30, 1965, and that he was guilty of laches. He also concluded that Dr. Martin was an employee and not a student. But he held that the post Dr. Martin had left was a "temporary position" and therefore dismissed the complaint.

The hospital wisely does not question the findings that Dr. Martin was an employee and that he was not guilty of laches. It does, however, maintain that there was no application for reinstatement within the ninety-day period specified in the statute. At first glance, it might appear odd for the hospital to

---

1. At this point Dr. Martin sought legal advice and was referred to the Reemployment Veteran's Bureau of the Department of Labor. His case was referred to the United States Attorney for the Southern District of New York, who later declined to sue.

claim that Dr. Martin's barrage of communications somehow failed to satisfy the statutory requirement. However, the hospital argues that while Dr. Martin initially requested reinstatement in his prior position and also communicated with the hospital during the statutory period, there is no evidence that any of the latter communications included the former request.

■■ Despite this, we agree with the trial judge that Dr. Martin's communications satisfied the requirement of timely application for reemployment. The requests made while he was still in the Navy put the hospital on ample notice of his claim. It is true that the communications during the ninety-day period immediately following his discharge and his undertaking a residency in Boston apparently requested only that he be hired for the second year of residency, a position to which he was not entitled under the statute, see Moe v. Eastern Air Lines, 246 F.2d 215 (5 Cir. 1957), cert. denied, 357 U.S. 936, 78 S.Ct. 1380, 2 L. Ed.2d 1550 (1958). But these letters do not suggest that he was no longer interested in the first-year residency position if that was the best he could get. Indeed, the letter of November 30 expressed his regret that he had not been reinstated. It would be out of keeping with the broadly protective purpose of the statute to deny its benefits because Dr. Martin did not, during the ninety days following discharge, repeat the request which the hospital had already twice rejected. As said in Trusteed Funds, Inc. v. Dacey, 160 F.2d 413, 422 (1 Cir. 1947), a veteran does not necessarily lose "all his rights under the Act merely because in applying for reemployment he couples such application with a demand for something he erroneously believes to be his due." See also Boston & M. R. R. v. David, 167 F.2d 722, 725 (1 Cir. 1948). This is particularly true where as here the employer was in no way prejudiced by the technical failure. Dr. Patterson testified explictly that Dr. Martin would not have been reemployed even if a vacancy had existed, thus confirming the suspicion to which the record naturally gives rise.

■ The chief issue on appeal—whether the first year of residency is a "temporary position"—is more difficult, but here too we hold against the hospital. We start from the point that the mere fact that an employee was hired for a fixed term which has expired does not make the position "temporary" within the meaning of the statute. To read the act that way would entail the absurdity that an employee having the protection of a fixed period of employment would be worse off than one who could be discharged at will. Judge Magruder correctly stated in Trusteed Funds, Inc. v. Dacey, *supra*, 160 F.2d at 418, that "The important thing is the nature of the position rather than the terms of the contract of employment * * *." He gave as instances of "temporary" positions "an extra clerk hired during the holiday rush"[2] and "a substitute employee hired during the absence of a regular employee on a year's leave," citing Salzman v. London Coat of Boston, Inc. [1 Cir., 156 F.2d 538, cert. den. 67 S.Ct. 501]. Another example of a "temporary position" would be where a man had been hired to perform a particular task such as a defined piece of research, this has been completed during his military service, and the employer does not regularly employ persons for such tasks. Roosevelt's third assistant residency is a long way from these paradigms. When Dr. Martin returned from his service in the Navy, the position existed, and it still does.

■ Such appeal as there is in the hospital's case comes from the fact that the position is constantly being refilled and the hospital has not merely moral but

2. We do not think the court was contemplating the rare case where such an employee sought reinstatement only for future holiday rushes. While we need not decide the point, United States ex rel. and for Use and Benefit of Stanley v. Wimbish, 154 F.2d 773 (4 Cir. 1946), would indicate that such reinstatement should be ordered.

even contractual obligations to doctors who have entered its program. But the latter could be avoided by appropriate language in the contracts with successful applicants and, so far as concerns the former, we think Congress expressed a judgment putting the interests of the discharged serviceman over those of the new employee or, if it is decided to retain the latter, the employer. As the court below rightly said, it is the expectation of the parties as to duration which controls, and not the terms of the employment contract. Here Dr. Martin could reasonably have expected at the times he began service and was called for military duty that space would be made to reinstate him as a third assistance resident at Roosevelt Hospital when his service in the Navy was completed; indeed the hospital had said that "every effort" would be made to do this and the record shows this was done for others who differed from Dr. Martin only in having served their internship at Roosevelt—a difference legally irrelevant so far as concerned his rights to third assistant residency. His situation bore considerable resemblance to that of a probationary employee. Such employees have been increasingly successful in bringing themselves within the protection of the Act, Moe v. Eastern Air Lines, 246 F.2d 215 (5 Cir. 1957); Collins v. Weirton Steel Co., 398 F.2d 305 (4 Cir. 1968); cf. Tilton v. Missouri Pac. R. R., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964), and we are disposed to go along with the prevailing view. We do not find it significant that Dr. Martin contemplated remaining at Roosevelt Hospital for four years at the most and was far from assured of that, while the expectation of the probationary employee is that employment will be "for an indefinite time." Moe v. Eastern Air Lines, *supra*, 246 F.2d at 219. In terms of the statutory policies, even one year is a significant

period for a young doctor to be relieved of the necessity of jobhunting, to reacquire the skills in surgery he possessed before being called to serve his country, and to gain the further training provided by a residency program. We need not decide the minimum expected continuation necessary to avoid "temporariness." *Cf.* 5 C.F.R.Pt. 353 (civil service employee appointed for longer than one year is entitled to reemployment).

Accordingly we reverse and remand with instructions to enter an order requiring Roosevelt Hospital to offer Dr. Martin a post as a third assistant resident in surgery for the academic year beginning July 1, 1970, to accept him if he signs a contract within 30 days, and to give him the consideration for promotion which was promised when he was first accepted.[3]

3. At the argument we asked counsel whether we were really to believe that Dr. Martin wished to become a third assistant resident at Roosevelt seven years after he had begun service at the hospital and five years after he had become entitled to reinstatement; counsel responded that he had interrogated his client and the answer was yes.