**Billy William AKERS**

v.

**Willis F. ARNETT, Millard Barrington, Joe Galan, Jr., Ben D. Harris, Edward E. Hogan, Lewis Homburg, W.H. Hopkins, Earl H. Kaiser, Jr., Andrew L. Laws, P.R. Phillips, John T. Scardasis, George Sanders, as Trustees of the Maritime Association—I.L.A. Pension Fund.**

Civ. A. No. H–82–3769.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 16, 1983.

Linda M. Cipriani, Asst. U.S. Atty., Daniel K. Hedges, U.S. Atty., Houston, Tex., William H. Berger, Atty. Dept. of Labor, Atlanta, Ga., for plaintiff.

James P. Cooney, Royston, Rayzor, Vickery & Williams, Houston, Tex., for defendants.

### MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

This action arises under the Veteran's Reemployment Rights Act ("The Act"), 38 U.S.C. §§ 2021–2026 (1979 & Supp.1983). Plaintiff Billy W. Akers sues defendants as trustees of the Maritime Association—International Longshoreman's Association ("I.L.A.") Pension Fund for pension benefits which he alleges were denied him in violation of the Act. The Act requires that any person who leaves an "other than temporary" position with an employer to serve in the armed forces, satisfactorily completes this service, and applies for reemployment within ninety days of discharge, be "restored by such employer or employer's successor in interest to such position or to a position of like seniority, status, and pay" if still qualified to "perform the duties of such position" and "unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so." 38 U.S.C. § 2021. Each side has filed a motion for summary judgment upon which, the parties agree, the case will be decided.

The facts are not in dispute. Beginning in 1943 at the age of thirteen, plaintiff began work as a longshoreman through the I.L.A. Local 1273 Hiring Hall. In 1946 he left school to seek work through the Hiring Hall on a daily basis and from January

through September of that year worked a total of 349 hours for various employees. In October 1946 plaintiff enlisted in the Marine Corps, serving three years and earning an honorable discharge. In October 1, 1949 Akers returned to the waterfront to resume work as a longshoreman. Twenty-seven years later, on January 5, 1976, he applied for a pension under the I.L.A.'s pension plan, claiming thirty years of continuous service, including the time spent in the Marine Corps. This application was denied. Defendants refused to give credit to plaintiff for his years of military service; thus, by their reckoning, Akers had failed to accumulate the requisite thirty years of continuous service. Upon denial of his application, plaintiff continued to work as a longshoreman until 1980 when he was awarded a pension.

.The trustees denied plaintiff his pension in 1976 on the basis that an employee's years of military service are credited as part of the period of "continuous service" only after an employee first has worked at least 400 hours in a year preceding military service. Therefore, since plaintiff had not accrued 400 hours in any one year before enlisting, defendants refused to count his three-year tour of duty as a Marine toward his period of continuous service. Instead, the trustees designated 1950 as the year when Aker's "continuous service" commenced because that is the first year in which plaintiff actually worked more than 400 hours as a longshoreman. The defendants' determination of plaintiff's ineligibility for a pension in 1976 depended on an interpretation of the following provisions of the I.L.A. pension plan:

4.1 *Age Pension*

(a) ...

(b) Section 4.1(b) of the Plan provides in applicable part:

An Employee who ceases employment in the industry on or after October 1, 1974, and prior to October 1, 1976, shall be eligible to receive an Age Pension if such Employee

(1) has made formal application for an Age Pension to the Trustees on forms provided by the Trustees; and

(2) has, as of some date after October 1, 1974 ... (c)ompleted thirty or more years of Continuous Service;

(3) has seven hundred (700) or more Average Hours.

5.1 *Continuous Service*

Continuous Service is the latest period of uninterrupted employment in the industry beginning with the first year in which the Employee is employed in the industry for at least four hundred (400) hours and ending with the date, on or after October 1, 1956, as of which the Employee claims to have satisfied the eligibility requirements for an Age or Disability Pension under Subsection 4.1 or 4.2 of the Plan. An Employee's employment in the industry shall be considered uninterrupted unless in each of more an two (2) consecutive years, such Employee has less than four hundred (400) hours of employment in the industry; provided, however, that failure to be employed in the industry for at least four hundred (400) hours in any one year for any of the reasons set forth in the following paragraphs (a), (b), (c) and (d) of this Subsection 5.1 will be governed as follows:

(a) *Military Service*

If an Employee enters the Armed Forces of the United States and returns to employment in the industry within the time prescribed by law, he shall be credited with four hundred (400) hours for each of the first three (3) consecutive years (and pro-rata for any period less than a full year) of such military service and for such additional period, not to exceed two (2) years, as the Trustees may approve. to protect his Continuous Service record, an Employee must furnish to ; the Trustees such evidence of his military service as the Trustees may reasonably require.

Nowhere in the language of these or any other portions of the pension plan does it either state or imply that an employee will

earn credit for his military service only after first working 400 hours in one year. In fact, Section 5.1 expressly provides that an employee will be credited with 400 hours a year for at least the first three years of consecutive service in the armed forces; there is no mention of any restriction or qualification on this, much less the one imposed by the defendants.

In explaining their position that the period of "continuous service" commences only after a longshoreman performs 400 hours of actual work in one year, the trustees assert that any other interpretation of the pension plan's provisions would mean that a person could work as little as one hour in one year, enlist in the same year, and obtain three years of continuous service credit upon return to the industry after discharge.[1] This explanation strikes this court as disingenuous at best. It is unclear just what dangers the defendants are trying to guard against by interpreting the plan in so ungenerous a fashion since it seems unlikely that anyone would try to take advantage of the pension plan in the way suggested. Even if a longshoreman were to serve in the military after putting in only one hour on the docks and subsequently obtain three year's credit for this service, he would still have to return to the waterfront to put in twenty-seven more years to qualify for the thirty-year retirement pension.

Not only was plaintiff entitled to an age pension in 1976 by the express terms of the plan, but he was also so entitled by the Supreme Court's decision in *Alabama Power Co. v. Davis*, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). In that case, Davis, a permanent employee with Alabama Power Company, applied for a pension upon his retirement. The company gave him credit for his years of employment excluding 30 months he spent in the armed forces between March 18, 1943 and October 8, 1945. Davis claimed that under the Act he was entitled to credit for his period of military service and sued to obtain it. The court

reviewed the applicable precedent and from it culled the following test to determine if a particular claimed benefit is a right of seniority secured by the statute:

> If the benefit would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer, and if it is in the nature of a reward for length of service, it is a "prequisite of seniority." If, on the other hand, the veteran's right to the benefit at the time he entered the military was subject to a significant contingency, or if the benefit is in the nature of short-term compensation for services rendered, it is not an aspect of seniority within the coverage of [section 2021].

431 U.S. at 589, 97 S.Ct. at 2007.

The court then analyzed Davis' right to pension credit for military service in light of the two prongs of this test. First, the court determined that Davis had satisfied the "reasonable certainty" requirement because his work history both before and after his tour of duty indicated that had he not entered the military, he would "almost certainly have accumulated accredited service for the period between March 18, 1943, and October 8, 1945. Unpredictable occurrences might have intervened, but 'we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights.'" *Id.* at 591, 97 S.Ct. at 2008 (quoting *Tilton v. Missouri-Pacific Railroad Co.*, 376 U.S. 169, 181, 84 S.Ct. 595, 602, 11 L.Ed.2d 590 (1964). Second, the court found that pension payments are predominantly rewards for length of services with the same employer rather short-term compensation for services rendered, and are, as such, a "perquisite of seniority." With both prongs of the test satisfied, the Court ordered Alabama Power Company to pay Davis a pension which included credit for his months of military service. *Id.* 431 U.S. at 594, 97 S.Ct. at 2009.

In the case at bar, as in *Alabama Power*, the plaintiff is requesting that he be given

---

1. This explanation was contained in a letter dated September 2, 1976 sent by James H.

Thacker, Administrator for the I.L.A. Pension Fund, to the plaintiff.

credit toward his retirement pension for his military tour of duty. The retirement plan in question herein, like the one at issue in *Alabama Power*, vests only after a lengthy period and uses payment formulas that depend on years of service, thus it is a "perquisite of seniority" and the second prong of the *Alabama Power* test is satisfied. This court also has no difficulty in finding that Akers also has met the "reasonable certainty" standard of Alabama Power. If he had not enlisted, he almost certainly would have accumulated the 400 hours required by the pension plan. Between January 1 and September 30, 1946, plaintiff recorded 349 hours of work. This means that he had the three months remaining in that year to work the fifty-one more hours needed to total 400. Since plaintiff had only begun to work full time beginning in the summer of 1946 when he left school and had still managed to accumulate 349 hours, it would have been extremely unlikely that Akers would not have accrued the threshold number of hours. *See Tilton v. Missouri-Pacific Railroad*, 376 U.S. 169, 180–81, 84 S.Ct. 595, 602, 11 L.Ed.2d 590 (1964).

Although plaintiff satisfies the criteria set forth in *Alabama Power*, an issue remains as to whether he is an "other than temporary" employee so as to come within the protection of the Act and *Alabama Power*. Plaintiff argues that there is no issue in this case of "other than temporary" status because at the time he left for military service, he was an "employee" as defined by the pension plan, and as such had pension rights under the plan.[2] Defendants refute this argument and instead contend that in 1946 Akers was a "casual" laborer, one who worked only when there were not enough regular longshoremen to fill the work gangs required on the docks that day. As a "casual", defendants argue, plaintiff's situation was analagous to

that of the plaintiffs in *Cox v. International Longshoremen's Association, Local 1273*, 343 F.Supp. 1292 (S.D.Tex.1972), *aff'd per curiam*, 476 F.2d 1287 (5th Cir.1973), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973); they aver that the decision in *Cox* is persuasive here.

The test in this circuit for determining whether a position held by an employee was temporary or nontemporary is set forth in *Moe v. Eastern Airline*, 246 F.2d 215, (5th Cir.1957). In that case, which concerned a probationary employee, the court stated:

> Keeping in mind the purpose of the Act, we think that the controlling determination is whether, regardless of the contract of employment, there was a reasonable expectation that the employment would be continuous and for an indefinite time.

*Id.* at 219.

Since its formulation, the *Moe* test has been applied by many courts. *E.g. Stevens v. Tennessee Valley Authority*, 687 F.2d 158, 161 (6th Cir.1982); *Cox*, 343 F.Supp. 1292 (S.D.Tex.1972). In *Cox*, the plaintiffs, veterans who served in the armed forces in the late 1960s, sued I.L.A. Local 1273 and thirty stevedore companies under the Act for advancement in seniority as longshoremen and for recovery of back wages which, they allege, were denied them as a result of the defendants' refusal to grant credit for time spent in the service. The court in *Cox* decided that the plaintiffs did not come under the umbrella of the Act because as casual laborers, "they could not reasonably expect that their employment would be continuous and indefinite." *Id.*

The purpose of the "reasonable expectation" requirement is to recognize that a "temporary position, one which is held only briefly with no preferential right to employment, could very well be lost anyway,

---

**2.** An "employee" for purposes of the I.L.A. Pension Fund is defined as "... any water front employee of the Employers whose wage rates and working conditions are established by collective bargaining agreements between the Union and Employers."

The term "Employer" was deemed to refer to one of a list of stevedoring companies in Section I of the Agreement of Trust for the I.L.A. Pension Plan.

even though the person involved was not called to military service." *Cox,* 343 at 1298; *see also Moe v. Eastern Airlines,* 246 F.2d at 219. This court also notes that the Act is to be construed liberally in order to carry out its underlying policy which is to prevent veterans from being penalized for being absent from civilian employment because of service to their country. *Fishgold v. Sullivan Drydock & Repair,* 328 U.S. 275, 284, 66 S.Ct. 1105, 1110, 90 L.Ed.2d 1230 (1946). Analyzing the facts of this case in light of the policy and requirements of the Act, this court is convinced that Akers qualifies for protection under it and would be penalized if it were not applied to him.

This case is clearly distinguishable from *Cox.* In the latter, plaintiffs sued to be advanced from casual to seniority status. In order to receive seniority credit for a given year, a longshoreman had to work 1,200 hours in that year. Failure to work the required 1,200 hours per year resulted in the loss of one seniority year. In the year prior to induction, none of the plaintiffs in Cox worked anything even approaching 1,200 hours.[3] In the case *at bar,* plaintiff sues for pension rights which would begin to accrue when an employee accumulates 400 hours of work in any one year. There are additional requirements before a longshoreman would be eligible for an age pension, but none of these involves a distinction between casual and seniority status. In fact, a review of the requirements for a pension reveals that it is entirely possible that a "casual" laborer who has never worked sufficient hours in any one year to advance to senior status under the 1200 hour requirement still could qualify for a pension upon retirement.[4] In addition, the plaintiffs in Cox never came close to earning the 1200 necessary hours before entering the armed forces. In contrast, in 1946 Akers was just 51 hours

short of achieving the threshold 400 hours, a goal he, in all reasonable probability, would have attained and surpassed with ease.

■ In view of the facts of the case, this court finds that Akers could have reasonably expected that his opportunity to work 400 hours and more would be indefinite and continuous. Consequently, Akers was a nontemporary employee under the Act and, in accordance with its provisions and the Supreme Court cases interpreting them, this court holds that the clock on plaintiff's pension began running in 1946; he became eligible to begin collecting it thirty years later in 1976.

## II.

■ The parties are in agreement that the doctrine of laches is applicable to a veteran's reemployment rights case. *Lingenfelter v. Keystone Consolidated Industries, Inc.,* 691 F.2d 339, 340 (7th Cir.1982); *Alber v. Norfolk & Western Railway Co.,* 654 F.2d 1271, 1278 (8th Cir.1981). There is also agreement that plaintiff's cause of action accrued in 1976 when his initial application for a pension was denied by the trustees. *See Davis v. Alabama Power Co.,* 383 F.Supp. 880, 893 (N.D.Ala.1974) *aff'd per curiam,* 542 F.2d 650 (5th Cir. 1976), *cert. denied,* 429 U.S. 1037, 97 S.Ct. 731, 50 L.Ed.2d 748 (1977). Therefore, defendants argue, Aker's complaint, is barred by the doctrine of laches since it was not filed until six years after the accrual of his right of action.

■ Laches is an equitable doctrine and "principally a question of the [equity or] inequity of permitting the claim to be enforced." *Bush v. Oceans International,* 621 F.2d 207 (5th Cir.1980) (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946)). An

---

**3.** In the year preceding their induction into the Marine Corps, plaintiff Cox worked a total of 714.50 hours, plaintiff Palmer worked 708.00 and plaintiff Heaton worked 646.75 hours.

**4.** As set forth in section 4.1 of the pension plan, to be eligible for a thirty-year pension, a long-

shoreman has to complete at least 30 years of continuous service and have 700 or more average hours. Average hours are computed by dividing the aggregate of all hours worked in the industry by thirty.

action will not be barred by laches unless the court finds there has been inexcusable delay by the plaintiff in instituting suit and prejudice to the defendant as a result of the delay. As was recently stated by the seventh circuit:

> In order to support a defense of laches, there must be a showing of both a lack of diligence by the party against whom the defense is asserted and prejudice to the defending party. (citation omitted.)

*Lingenfelter v. Keystone Consolidated Industries, Inc.*, 691 F.2d at 340. While the plaintiff bears the burden of justifying any delay, if this delay is found by the court to be inexcusable, the burden then shifts to the defendant to demonstrate prejudice. *Id.*

■ In this case, even assuming *arguendo* that Akers was unexcusably dilatory in bringing his claim, the trustees have failed to show that the six-year delay was detrimental to their defense in any significant way.[5] They contend that the passage of the six years since 1976 has critically affected their ability to present evidence about the employment opportunities at the Port of Houston in 1946. Specifically, defendants state that the

> records of the number of longshoreman available for work out of Local 1273, their seniority and the works that would have been available to them in the months of October, November, and December, 1946, not to mention the number of longshoremen returning from service and other factors are simply no longer available. While such a determination would have been difficult in 1976; the passage of six additional years have [sic] only compounded the problem."

It is unclear to this court, and enlightenment is not forthcoming from the trustees, why records or testimony pertaining to 1946 would be unavailable in 1982 but available in 1976. In fact, it doesn't appear to this court as if the six-year delay has made an appreciable difference. In the

absence of a showing of prejudice to defendants' case, this court rules that plaintiff's claim is not barred by laches.

### III.

■ In 1976, upon a refusal of his initial request for a pension, plaintiff worked four more years till 1980. In that year his second application was approved, and he retired. Plaintiff earned substantially more during the period from 1976 to 1980 than he would have received if retired. As a consequence, defendants allege that Akers has sustained no compensable economic loss. In turn, plaintiff relies on *Bunnell v. New England Teamsters & Trucking Industry*, 655 F.2d 451 (1st Cir.1981), *cert. denied*, 455 U.S. 908, 102 S.Ct. 1253, 71 L.Ed.2d 446 (1982) as authority for his contention that he is entitled to retroactive pension benefits. While the trustees attempt to downplay the value of *Burnell*, they cite no cases to contradict it or to support their own position. This court finds itself in agreement with the decision in *Burnell* and decides that Akers is entitled to be compensated for pension benefits from 1976 to 1980 notwithstanding the fact that he worked during those years. But for the unlawful denial of his pension rights, Akers would not have worked the four additional years.

Finally, with regard to prejudgment interest, the assessment of prejudgment interest is discretionary with the district court. Accordingly, this court is of the opinion that the only way plaintiff can be made whole is by awarding him prejudgment interest from 1976. *Hembree v. Georgia Power Co.*, 637 F.2d 423, 429–30 (5th Cir., Unit B 1981). *See Helton v. Mercury Freight Lines, Inc.*, 444 F.2d 365 (5th Cir.1971).

Accordingly, it is ORDERED, ADJUDGED, and DECREED that plaintiff's motion for summary judgment be, and the same is GRANTED and defendant's motion for summary judgment be, and the same is

---

5. Plaintiff argues that the six-year delay is not attributable to him because the case was in the hands of the United States Department of Labor and the United States Attorney during that period.

DENIED. Defendants are to pay to plaintiff an amount equal to the sum he would have received in pension benefits from 1976 to 1980 plus prejudgment interest of 9.95% compounded annually.