Leonard J. JULIEN

v.

GOMEZ & ANDRE TRACTOR REPAIRS, INC.

Civ. A. No. 76–260.

United States District Court, M. D. Louisiana.

Sept. 19, 1977.

William J. Jefferson, Jefferson & Bryan, New Orleans, La., for plaintiff.

Malcolm J. Dugas, Jr., Steven M. Joffrion, Joffrion & Dugas, Donaldsonville, La., for defendant; A. Robert Theibault, Wilkinson, Mawhinney & Theibault, Arlington, Va., of counsel.

E. GORDON WEST, District Judge:

Plaintiff, Leonard J. Julien, brings this action for patent infringement requesting preliminary and permanent injunctive relief, treble damages, costs, and attorneys' fees. It is alleged in the complaint that plaintiff is the owner of U.S. Letters Patent Number 3,286,858, which was issued on November 22, 1966 on Julien's invention, a mechanical sugar cane planter. Plaintiff complains that defendant has been manufacturing and marketing a planter which is substantially identical to the patented invention as to means, operation and result, and on this basis requested a temporary restraining order, which, after conference with counsel, was denied. Thereafter, defendant Gomez & Andre Tractor Repairs, Inc. (Gomez), moved for summary judgment in its behalf. This too was denied. After the filing of a multitude of exhibits and after the submission of a joint stipulation by counsel, this Court with consent of counsel ordered the case submitted on the record on the question of the propriety of the issuance of a preliminary injunction.

## THE JULIEN PATENT

"1. Cane planting machinery for cooperation with an open-topped vehicle, said machinery comprising a portably mounted main frame, means for connecting said main frame to said vehicle in a position in which at least one end of said sub-frame is suspended over said vehicle and is constrained to travel therewith, means for raising and lowering said sub-frame relative to said main frame, at least one flexible endless carrier means mounted on said sub-frame to travel in a predetermined path relative thereto, means for driving said endless carrier means, grab means carried by and spaced longitudinally along said endless carrier means, said grab means being adapted to open and close in a direction transverse to said pre-determined path, means biasing said grab means to its closed position, expan-

der means on said sub-frame positioned to temporarily open said grab means at a cane pick-up point near one end of said sub-frame and at a cane release point near the other end of said sub-frame, and (sic) upwardly open trough means positioned beneath said release point to receive cane released by said grab means and guided into a pre-determined position relative to the path of travel of said vehicle."

In practice, the Julien planter consists of a cane cart in which seed sugar cane are laid horizontally. Above the cart, a sub-frame carries an endless chain on two sprockets, which chain in turn holds a number of the grab means mentioned in claim 1 of the patent. These grabs open and close in much the same way as a large pair of pliers, but the inner surfaces of the jaws are equipped with teeth so as to ensure that cane does not fall out of the grab. These grabs are carried on the chain in closed position until a grab approaches the sprocket toward the forward end of the cane cart. At that time its jaws are spread apart by an expander. As the grab travels around the sprocket, the spring which holds it in a closed position is allowed to contract, and the jaws of the grab snap shut. At this point, the subframe, which may be raised and lowered from the operator's seat, should be in a position relative to the cane in the cart such that the grab closes on a stalk of cane. Thereafter, the grab, holding a stalk, is carried to the rear sprocket where the grab is opened again in the same manner, releasing the stalk, which falls into a trough appended to the rear of the cart. This trough directs the cane into the furrow. The grabs are positioned along the chain so that no stalk will be gripped by more than one grab at the same time. The typical planter carries several sets of sprockets above the cart, each with its own chain set with grabs, alternately spaced for a continuous feeding effect. Plaintiff contends, and the evidence shows, that this device is a substantial advance in the art of cane planting, which in the past was carried out by hand. This invention makes possible the planting of 8 to 12 acres per 8 hour day using 2 men, whereas formerly 6 men would be needed to plant 4 to 5 acres in the same period.

## THE ACCUSED DEVICE

It has been stipulated by the parties that defendant's planter is the same as plaintiff's in every material respect with one exception: Where plaintiff's machine employs a grab device which opens and closes to pick up the cane and deliver it to the trough, defendant's accused structure utilizes a flat piece of metal with three prongs, which functions as a rake, pulling the cane to the trough instead of carrying it. This piece, a flat metal plate, has no moving parts, and the expander used in the Julien planter is omitted from the device. The sole issue in this case is, therefore, whether defendant's structure avoids infringement by virtue of its use of this rake plate as opposed to plaintiff's grab.

## ON THE QUESTION OF INFRINGEMENT

In an action for a preliminary injunction by a patentee, the plaintiff must show beyond question that the patent sued upon is valid, that he holds title to the patent, and that there is a substantial likelihood that he will prevail on the merits. *McMaster v. Daugherty Mfg. Co.*, 219 F. 219 (3rd Cir., 1914). Although a patent, once issued, is presumed to be valid, 35 U.S.C.A. § 282, it has been held that "the presumption of validity is too slim a reed to support a preliminary injunction in a patent case." *Mayview Corp. v. Rodstein*, 480 F.2d 714 (9th Cir., 1973). Plaintiff, however, has submitted exhibits which tend to show substantial public approval and acceptance of his invention, and defendant has introduced nothing in derogation thereof. The burden of proving the invalidity of a patent lies on him who asserts it, 35 U.S.C.A. § 282, and it must be proved by clear and convincing evidence. *Hayes Spray Gun Co. v. E. C. Brown Co.*, 291 F.2d 319 (9th Cir., 1961). Additionally, in *Rosenberg v. Groov-Pin Corp.*, 81 F.2d 46 (2d Cir., 1936), it was

suggested that proof of public and industrial acquiescence in the patent might in and of itself be tantamount to an adjudication of its validity. See also *Eli Lilly v. Generix Drug Sales, Inc.,* 460 F.2d 1096 (5th Cir., 1972). Plaintiff has shown by exhibits filed in the record that for nearly ten years his planter has enjoyed acclaim in the industry. There is no evidence to the contrary in this record, and since plaintiff's title to the patent has been stipulated to by the parties, we find that the Julien patent is valid. Accordingly, we turn our attention to the issue of infringement.

The instant case is typical of many patent disputes in that the issue is easy to identify but sometimes difficult to resolve. The issue for decision here is simply, "Is the substitution of defendant's rake plate for plaintiff's grab means and expander on an otherwise identical machine sufficient for defendant to overcome plaintiff's charge of patent infringement?" Plaintiff argues that while no case of literal infringement is made out, the doctrine of equivalents operates in his favor. Defendant contends that to apply the doctrine in this case would amount to overstretching the claims of Julien's patent—that those claims cannot in any way be read to provide for or anticipate the use of the rake plate. Defendant urges further that even under the doctrine no equivalency exists since plaintiff's patent is not a pioneer patent and must therefore be confined to a narrow range of equivalents.

A patentee may invoke the doctrine of equivalents if the accused device performs substantially the same function in substantially the same way to obtain the same result. If these requirements are satisfied, the two devices are the same, even though they differ in name, form, or shape. "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case . . . (Equivalence) does not require complete identity for every purpose and in every respect. In determining equivalents, things equal to the same thing may not be equal to each other, and by the same token, things for most purposes different may sometimes be equivalents." *Graver Tank & Mfg. Co., Inc. v. Linde Air Prods. Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); *Reese v. Elkhart Welding & Boiler Works, Inc.,* 447 F.2d 517 (7th Cir., 1971); *Laitram Corp. v. Deepsouth Packing Co.,* 301 F.Supp. 1037 (E.D.La., 1969). The range of equivalents depends on the extent and nature of the invention. If the invention is broad or primary in character, the range of equivalents will be correspondingly broad. *Miller v. Eagle Mfg. Co.,* 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121 (1894). It follows, then, that all inventions which employ substantially the same means as a pioneer invention to achieve the same result are infringers, even though the subsequent invention may contain improvements in the separate mechanism which goes to make up the invention. *Morley Sewing Machine Co. v. Lancaster,* 129 U.S. 263, 9 S.Ct. 299, 32 L.Ed. 715 (1889). Not only are pioneer patents afforded such broad protection, but those which make a substantial contribution to an already established art may receive similar treatment. *Eibel Process Co. v. Minnesota & Ontario Paper Co.,* 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923). The parties have stipulated that plaintiff's device is a "substantial improvement" over cane planting by hand, and exhibits submitted by plaintiff convince this Court that plaintiff's device has fairly revolutionized the industry at the time of its inception. Moreover, the parties have stipulated that plaintiff would testify that prior to the invention there was no known machinery for properly planting sugar cane. Certain inferences raised by the defendant's proffer of prior patents are effectively dispelled by plaintiff's exhibits which tend to show that none of these earlier planting machines worked. There has been nothing introduced to refute plaintiff's testimony to the effect that its invention was indeed a substantial advance in the art of cane planting. Thus, we accord the Julien planter a broad scope of equivalents in determining whether infringement exists.

The stipulation filed by the parties states that "Defendant's device comprises all of the elements of claim no. 1 of plaintiff's

claim except: (a) a grab means carried by and spaced longitudinally along and (sic) endless chain as carrier means, which chain is common to both devices; (b) a grab means being adapted to open and close in a direction transverse to predetermined path of the endless chain or carrier means; (c) a means, usually a spring, biasing said grab means to its closed position; (d) expander means on the subframe of plaintiff's device which expander means is positioned to temporarily force open said grab means at a cane pick-up point near the other end of said subframe." The differences herein noted form the basis for defendant's argument that by virtue of the omission of essential elements of the patent, infringement is avoided by the accused structure. Placing its reliance primarily on *Marsh Corp. v. United States Gauge Co.*, 129 F.2d 161 (7th Cir., 1942), defendant points out that four essential elements of plaintiff's claim have been omitted from the accused device, thus precluding a finding of infringement. To find infringement in this case, it is said, would "overstretch" the claims beyond what was actually patented, thus bestowing upon the plaintiff "an undue enlargement of (his) monopoly." *Marsh*, supra, at 166. We find this language to be inapplicable, for the Court in *Marsh* predicated its holding on an express finding that the patent there alleged to have been infringed was *not* an invention to which broad treatment under the doctrine of equivalents could properly be extended. On this basis, the Court agreed with the defendant that the plaintiff's invention was confined to the narrow language of the claims.

█ Such is not the case here. We have found the Julien patent to be deserving of broad or primary treatment, and now must decide whether defendant's device comes within the range of equivalents thus afforded. *Graver*, supra. Defendant attempts to invoke the well-settled rule that infringement is manifestly avoided by the omission of a single element contained in the plaintiff's claim. *Dunbar v. Myers*, 94 U.S. 187, 24 L.Ed. 34 (1876), and cases cited therein. However, where one element has been

omitted and another substituted, the doctrine of equivalents may nevertheless apply. *Sears, Roebuck & Co. v. Minnesota Mining and Mfg. Co.*, 249 F.2d 66 (4th Cir., 1957). The present inquiry is therefore not inappropriate.

The Supreme Court, in *Atlantic Works v. Brady*, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438 (1883), stated:

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention."

█ The purpose of the doctrine of equivalents is to protect the patentee from competition by those who make insignificant changes in the patent. As the Supreme Court in *Graver*, supra, expressed it:

" . . . courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law. One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement. To prohibit no other would place the inventor at the mercy of verbalism

and would be subordinating substance to form. It would deprive him of the benefit of his invention and would foster concealment rather than disclosure of inventions, which is one of the primary purposes of the patent system.

"The doctrine of equivalents evolved in response to this experience." 339 U.S. at 607–608, 70 S.Ct. at 856.

In view of this philosophy, we have no alternative but to find that defendant's rake plate constitutes an infringement under the doctrine of equivalents. The evidence is undisputed to the effect that the company which manufactures the plaintiff's device under his license often improperly affixed the grabs, which, in many cases, required their replacement. The cost of such replacement being quite prohibitive, many farmers in the area began using a homemade rake means as a substitute for the grabs on plaintiff's machines. Apparently, the interchangeability of the two devices is a fact which had been known for some time prior to defendant's commercial marketing of the device. In determining equivalents, an important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was. *Graver*, supra, 339 U.S. at 609, 70 S.Ct. 854. It is obvious that this was the case here. The defendant has clearly attempted, by instituting a formal difference, to escape the reach of the doctrine of equivalents. But mere changes in form or position do not preclude a finding of infringement, *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147 (1929), even when, as here, the accused device is outside the literal scope of the claim. *Reiner v. I. Leon Co.*, 324 F.2d 648 (2d Cir., 1963). We find, therefore, that infringement does exist here. As was said in *Gaddis v. Calgon Corp.*, 506 F.2d 880 (5th Cir., 1975):

"We recognize the well-established rule that an omission in the accused device of an ingredient or element contained in the complainant's patent avoids infringement. (Citations omitted.)

"Nevertheless, (plaintiff) can still prevail under the doctrine of equivalents if his and (defendant's) devices do the same work in substantially the same way and accomplish the same result. (Citations omitted). The theory on which the doctrine of equivalents is founded is that 'if two devices do the same work in substantially the same way and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.'" (Citations omitted).

We are convinced that the evidence in this case clearly supports a finding of infringement. When one takes into consideration the broad range of equivalents with which we have held this patent must be treated, in conjunction with the overwhelming evidence as to the obviousness of the interchangeability of the two parts here concerned, our holding of infringement must logically follow. We find that although the defendant's device is without the literal reading of plaintiff's patent, it nevertheless operates in substantially the same manner, doing the same work in order to achieve the same result, thus bringing defendant's device within the range of equivalents afforded the Julien patent. Accordingly, defendant, Gomez & Andre Tractor Repairs, Inc., its officers, servants, agents, attorneys, workmen and employees, and all others acting by and under its direction or authority will be preliminarily enjoined from directly or indirectly making, using, selling or causing to be made, used, or sold the device herein held to have infringed U.S. Letters Patent Number 3,286,-858, belonging to plaintiff, Leonard J. Julien. Judgment will be entered accordingly.