**AMICUS, INC., Plaintiff,**

v.

**POST–TENSION OF TEXAS, INC., and National Post–Tensioning Services, Inc., Defendants.**

Civ. A. No. H–85–5849, H–86–2673.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 3, 1987.

---

Marc L. Delflache, Pravel, Gambrell, Hewitt, Kimball & Krieger, Houston, Tex., Sidney David and Charles P. Kennedy, Lerner, David, Littenberg, Krumholy & Mentlik, Westfield, N.J., for plaintiff.

Michael O. Sutton, Arnold, White & Durkee, Houston, Tex., E. Eldridge Goins, Jr., and Richard E. Schellhammer, Goins, Underkofler, Crawford & Langdon, Dallas, Tex., G. Byron Jamison, II, Jamison & McGregor, Houston, Tex., William D. Harris, Jr., Richards, Harris, Medlock & Andrews, Dallas, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE PRELIMINARY INJUNCTION

HITTNER, District Judge.

These two consolidated cases came before the Court on a hearing on September 25 and 28, 1987, on the motion by Plaintiff, Amicus, Inc., for a Preliminary Injunction against the Defendants, Post–Tension of Texas, Inc., and National Post–Tensioning Services, Inc. Following the hearing, the Court considered the Motion for Entry of Plaintiff's Proposed Findings of Fact and Conclusions of Law and the Defendants' Objections to Plaintiff's Proposed Findings of Fact and Conclusions of Law. The Court now enters its Findings of Fact and Conclusions of Law on the Preliminary Injunction.

## FINDINGS OF FACT

### Background

1. The Plaintiff, Amicus, Inc., (Amicus) is a corporation of the state of Delaware, having its principal place of business in Wilmington, Delaware.

2. The Defendants, National Post–Tensioning Services, Inc., and Post–Tension of Texas, Inc., are corporations of the state of Texas, having a place of business at 520 Thornton, Houston, Texas. The Defendants are referred to as Post–Tension of Texas.

3. Amicus is the owner of United States Patent No. 3,646,748 (Lang patent). This is a patent infringement action.

4. Amicus has moved for a preliminary injunction to enjoin Post–Tension of Texas from infringing the Lang patent during the pendency of this action. The process practiced by Post–Tension of Texas, which is alleged to infringe, is called the "Pattridge process."

### The Patent in Suit

5. The Lang patent describes a process for manufacturing post-tensioning tendons in Claim 6 and a product for use in post-tensioning in Claim 1. In the Lang process, a multiple-wire steel cable strand is passed through a grease applicator which surrounds the cable with a coating of grease; the cable is passed through a die where a seamless plastic tubular jacket is melt extruded around the cable; and the extruded plastic then shrinks down around the grease encased strand to form a tight seamless jacket. The Lang product is a tendon comprising a multiple-wire steel cable coated with a layer of grease and surrounded with a seamless tightly fitted plastic cover.

### Patent Validity and Title

6. Amicus has established a reasonable likelihood that the Lang patent is valid. Under 35 U.S.C. § 282 (1984), the Lang patent is presumed valid and the burden of establishing invalidity of the patent rests on the Defendants. There are two prior adjudications by federal district courts upholding the validity of the Lang patent after trial, viz. Lang v. Prescon Corp., 545 F.Supp. 933 (D.Del.1982), and Lang v. VSL Corp., 219 U.S.P.Q. 625 (E.D. Va.1982). Post–Tension of Texas did not challenge the validity of the patent at the

preliminary injunction hearing. Therefore, the Lang patent is presumed valid.

7. Amicus has demonstrated a reasonable likelihood that it will establish title to the Lang patent at trial.

### Infringement Under the Doctrine of Equivalents

8. Amicus has demonstrated a reasonable likelihood of success in establishing infringement of the Lang patent under the doctrine of equivalents.

9. The Pattridge process is an extrusion process. Similarly, the Lang process is an extrusion process. The Pattridge process modifies the Lang process in that an obstruction is in the die which creates a gap in the extruded plastic. Also, a slit in the shape of an arc is in the die which forms a flap in the extruded plastic. The plastic flap fuses to the remainder of the plastic jacket and encloses the cable. The sealing of this flap is also facilitated by rollers placed in the water trough.

10. These modifications in the Pattridge process did not stem from a technological advantage.

11. The Pattridge process of Post–Tension of Texas has the same function as the Lang process in that both are used to manufacture tendons for use in post-tensioning of concrete.

12. The Pattridge process of Post–Tension of Texas operates in substantially the same manner as the Lang process. The Pattridge process is an in-line extrusion process which incorporates the application of a thick layer of grease over a multiple-wire strand and the shrinking down of a plastic tubular jacket during extrusion to form a tight plastic cover over the grease. The modification of the die for the Pattridge process does not alter any of these important features of the process.

13. The Court does not accept Post–Tension of Texas's contention that its process is analogous to the prior art cigarette-wrap process or that its process uses a "ribbon" or a "discontinuous strip" of plastic like the cigarette-wrap process. With the modified die, the Pattridge process is admittedly still designed to produce a jacket during in-line extrusion which, although appearing somewhat seamed, shrinks down to form a tight fit over the greased tendons in substantially the same manner as the Lang process.

14. The Pattridge process of Post–Tension of Texas produces a result: namely, a post-tensioning tendon, which is substantially the same as the tendons produced by the Lang process. Both tendons are "suitable for use in post-tensioning of concrete" as called for in Claims 1 and 6 of the Lang patent. Post–Tension of Texas has used and sold the Pattridge tendons interchangeably with the Lang tendons on virtually all slab-on-grade jobs. There was some testimony by Defendants that Post–Tension of Texas was able to use the Pattridge tendon in high-rise jobs only with approval. There was also some testimony by Defendants that certain jobs specified a "seamless" jacket tendon, and would not use the Pattridge tendon. Nevertheless, nearly all of Post–Tension of Texas's customers who previously used Lang tendons have been supplied with Pattridge tendons.

15. Some witnesses testified that the tendons produced in accordance with the Pattridge process of Post–Tension of Texas do have splits. Other witnesses noted that some taping of splits was required on the job, along with the usual taping of other cuts or tears in the jackets of the tendons, but this splitting has no significant effect on performance by the tendons. Substantially the same performance and result are obtained from the Lang and Pattridge tendons.

16. The Pattridge tendons of Post–Tension of Texas perform substantially the same function in substantially the same way to obtain substantially the same result as the tendons defined by the Lang patent. Both the Lang tendons and the Pattridge tendons are used to post-tension concrete and the manner in which the two products operate is substantially similar. In terms of the results obtained, the Pattridge tendons are suitable for post-tensioning of concrete and have been used interchangeably for the Lang tendons.

## Irreparable Injury

17. Amicus has been and is being irreparably injured by Post–Tension of Texas's infringement of the Lang patent. The showing of Amicus's likelihood of success on both validity and infringement at trial in this case is very strong creating a presumption of irreparable harm to the invasion of the monopoly right protected by the Lang patent.

18. For some time, Post–Tension of Texas has been using processes alleged to infringe the Lang patent and not paying any royalties on its production. In the event of an ultimate judgment holding that the Pattridge process as practiced by Post–Tension of Texas is an infringement of the Lang patent, Paul White, the president of Defendant, Post–Tension of Texas, has testified that the Company would not be capable of satisfying a judgment for the full time period of the alleged infringement. It is Post–Tension of Texas's inability to satisfy a judgment that this Court finds satisfies a showing of irreparable injury.

19. Amicus has established a licensing program under the Lang patent. Post–Tension of Texas is selling product in competition with the Amicus licensees. Mr. Lang testified that Post–Tension of Texas's ability to bid projects using allegedly infringing tendons without paying royalty irreparably injures Amicus licensing program.

## Balancing of the Equities

20. Equity strongly favors Amicus's position on this motion for preliminary injunction as the owner of patent rights which have been adjudicated and held valid twice by separate federal district courts. Recently, the patent has been held infringed under the doctrine of equivalents by another federal district court in a case against a party also using a so-called Pattridge process. See Amicus, Inc. v. American Cable Co., Inc., 660 F.Supp. 161 (E.D.La.1987).

21. Fewer facts weigh in favor of Defendants' position on this motion. The Defendant has a license under the Lang patent and can produce post-tensioning tendons in accordance with the Lang patent and pay royalties to Amicus. An injunction will not prohibit the Defendants from producing tendons, bidding on jobs, and supplying tendons for those jobs.

## Collateral Estoppel

22. The decision in Lang v. Pattridge Post–Tension, Inc., 228 U.S.P.Q. 256 (W.D.La.1984), does not collaterally estop the Plaintiff in this case. Post–Tension of Texas has not established that the process which it is utilizing and the tendons so produced are identical in every material respect to the process and products which were held not to infringe the Lang patent in the Pattridge case.

23. The Pattridge process now being practiced at Post–Tension of Texas, and the tendons now produced, differ materially from the process and products involved in the Pattridge litigation. This makes the application of collateral estoppel inappropriate.

24. The Court credits the testimony of Dr. Morrow regarding the changes made in the process after the Pattridge litigation. Post–Tension of Texas changed the tooling for the extrusion dies and the operating parameters of the process. The parameters affected included the speed of the cable, the amount of grease employed, the extrusion temperatures and the type of plastic used. The changes achieved a securely sealed plastic jacket for the tendons. These changes made the allegedly infringing process different from the process held not to infringe in the Pattridge case.

## Laches

25. The defenses of laches and delay have been considered and are found to be without merit. Post–Tension of Texas has argued that Amicus is guilty of laches and cannot be irreparably injured, because Post–Tension of Texas has been practicing the allegedly infringing processes for some time and because the motion for a preliminary injunction in this case was filed approximately twenty months after the action was brought.

26. Post–Tension of Texas has not established any unreasonable delay by Amicus in bringing this action.

27. As to the timing of the filing of the motion for preliminary injunction, Amicus had no reasonable likelihood of success on the infringement issue until the decision in *Amicus, Inc. v. American Cable Co., Inc.,* 660 F.Supp. 161 (E.D.La.1987), in April of this year. Once that decision had been made and after settlement discussions in this case, the motion for preliminary injunction was promptly brought. Thus, the timing of the filing of the motion for preliminary injunction in this case does not evidence delay or lack of irreparable injury.

28. Amicus, as the applicant for the preliminary injunction, shall provide security in the form of a surety bond or cash in the sum of $350,000, which the Court deems proper for payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

29. Any Conclusion of Law hereinafter made which constitutes a Finding of Fact is hereby adopted as a Finding of Fact. Any Finding of Fact heretofore made which constitutes a Conclusion of Law is hereby adopted as a Conclusion of Law.

## CONCLUSIONS OF LAW

■ 1. At one time, the Fifth Circuit required the moving party for a preliminary injunction in a patent infringement suit to demonstrate beyond question that the patent sued on was valid and infringed, as well as showing that other equitable grounds for the injunction were present. *Eli Lilly & Co. v. Generix Drug Sales, Inc.,* 460 F.2d 1096, 1099 (5th Cir.1972). The movant for a preliminary injunction now must show a reasonable likelihood of success on the merits as to patent validity and infringement, and the lack of an adequate remedy at law or other irreparable harm. *H.H. Robertson, Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 388, 390 (Fed.Cir.1987).

■ 2. The Patent Statute, 35 U.S.C. § 282 (1984), is unambiguous: "A patent shall be presumed valid.... [T]he burden of establishing invalidity of a patent or any claim thereof shall rest on a party asserting such invalidity." A patent remains valid until a challenger proves that the patent has defects or that it is no longer enforceable. *Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 1270 (Fed.Cir.1985). Silence on the issue leaves untouched what patent statute presumes: namely, the patent's validity. *Id.* Therefore, since Post–Tension of Texas has not challenged the validity of the Lang patent at this stage, the Lang patent is presumed valid.

3. Amicus must also establish a reasonable likelihood that it will meet its burden at trial of proving infringement. *H.H. Robertson,* 820 F.2d at 390. Reasonable likelihood on this motion does not require that infringement be "proved beyond all question or that there be no evidence supporting the viewpoint of the accused infringer." *Id.* (citing *Atlas Powder v. Ireco Chemicals,* 773 F.2d 1230, 1233 (Fed.Cir. 1985)).

■ 4. Infringement under the doctrine of equivalents exists where the accused process or product performs substantially the same function in substantially the same manner to achieve substantially the same results as the patented invention. *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). The doctrine of equivalents is designed "to protect the patentee from an infringer who appropriates the invention but avoids the literal language of the claims." *Martin v. Barber,* 755 F.2d 1564, 1567 (Fed.Cir.1985). Infringement under the doctrine of equivalents is an appropriate ground for a preliminary injunction. *See, e.g., Julien v. Gomez & Andre Tractor Repairs, Inc.,* 438 F.Supp. 763 (M.D.La.1977), *aff'd,* 607 F.2d 1004 (5th Cir.1979).

■ 5. In a patent case, irreparable harm may be presumed to exist when a clear showing has been made of patent validity and continuing infringement. *Smith Intern., Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed.Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687

(1983); *Rohm & Haas Co. v. Cumberland Chemical Corp.,* 220 U.S.P.Q. 978, 982 (S.D.Tex.1983).

■ 6. Harm is irreparable when the movant for the preliminary injunction cannot be compensated adequately in money damages. *Rohm & Haas Co.,* 220 U.S.P.Q. at 982. Without a proven financial capability of meeting any financial recovery after trial, injury to a patent owner's rights must be considered irreparable. *Eli Lilly & Co. v. Premo Pharmaceutical Labs.,* 630 F.2d 120, 137 (3d Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980).

■ 7. Public policy favors protection of the rights secured by a valid patent. *Smith Intern.,* 718 F.2d at 1581; *see also Rohm & Haas Co.,* 220 U.S.P.Q. at 982.

■ 8. When a patentee "clearly shows" that the patent is valid and infringed, a court may, after balancing the equities, issue a preliminary injunction. *Atlas Powder,* 773 F.2d at 1233. "Balancing the equities is within the discretion of the ... court." *Id.* at 1234.

■ 9. Collateral estoppel will apply from a prior action against a party in a subsequent action if (1) the issue in the subsequent action is identical to the issue decided in the prior action; (2) the issue was actually litigated in the prior action; (3) resolution of the issue was essential to the final judgment in the prior action; and (4) the party against whom the estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *A.B. Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 702 (Fed.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984).

10. The first element of the defense of collateral estoppel requires that the issue in this action be identical to the question decided in the case of *Lang v. Pattridge Post–Tension, Inc.,* 228 U.S.P.Q. 256 (W.D. La.1984). *See A.B. Dick Co.,* 713 F.2d at 702. For this requirement to be met, the legal issues decided in both cases must be the same and the controlling facts must be identical. *Amicus, Inc. v. American Cable*

*Co., Inc.,* 660 F.Supp. 161, 168 (E.D.La. 1987).

11. The legal issue in this case is whether the Pattridge product and process infringes the Lang patent under the doctrine of equivalents. This was also the question in the *Lang* and *American Cable* cases. *See American Cable Co.,* 660 F.Supp. at 167–168.

12. As the controlling facts must also be identical, the Pattridge product and process litigated in the *Pattridge* trial must be identical to the process and products litigated in this trial. *See id.*

■ 13. The party seeking collateral estoppel has the burden of proof. *See Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 992 (5th Cir.1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978).

■ 14. The equitable defense of laches is comprised of three interrelated elements: (1) delay in asserting a right or claim, (2) inexcusable delay, and (3) undue prejudice resulting from the delay. *Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1161 (5th Cir.1982). Laches may defeat claims for injunctive relief. *Id.* at 1161 n. 14.

■ 15. The Plaintiff bears the burden of justifying any delay and, if the Court finds the delay to be inexcusable, the burden then shifts to the Defendant to demonstrate prejudice. *Akers v. Arnett,* 597 F.Supp. 557, 563 (S.D.Tex.1983), *aff'd per curiam,* 748 F.2d 283 (5th Cir.1984). The Court finds that the filing of a motion for a preliminary injunction after an adjudication in a different case which establishes a reasonable likelihood of success on the issue of infringement is excusable. Such delay does not evidence lack of irreparable injury or laches.

16. Any Finding of Fact hereinbefore made which constitutes a Conclusion of Law is hereby adopted as a Conclusion of Law. Any Conclusion of Law heretofore made which constitutes a Finding of Fact is hereby adopted as a Finding of Fact. It is therefore

ORDERED that the Plaintiff's Motion for Preliminary Injunction be GRANTED and that pending the trial and determination of this action, the Defendants, their directors, officers, agents, servants, employees, their attorneys, or any of the foregoing or any of those acting otherwise in privity or in concert with any of the foregoing be enjoined from:

(a) practicing a process for producing post-tensioning tendons which infringes U.S. Patent No. 3,646,748; or

(b) making, using, or selling tendons suitable for post-tensioning concrete which infringe U.S. Patent No. 3,646,748. It is further

ORDERED that Plaintiff shall provide security in the form of a surety bond or cash in the amount of $350,000 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.